**STATE of Minnesota, Respondent,**

v.

**William R. SHAMP, Appellant.**

**No. CX–87–1423.**

Court of Appeals of Minnesota.

April 19, 1988.

Review Denied June 10, 1988.

Hubert H. Humphrey, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co. Atty., M. Katherine Doty, Asst. Co. Atty., Anoka, for respondent.

C. Paul Jones, Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, C.J., and RANDALL and KALITOWSKI, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

Appellant William Shamp was convicted of one count of first degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(h)(v) (1986), and one count of second degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(g) (1986). On appeal, appellant claims the trial court erred in its jury instructions, improperly denied his right of cross examination, erred in allowing the state to amend its complaint, erred in admitting *Spreigl* evidence, and that the evidence was insufficient to support his convictions. We affirm.

## FACTS

In July 1986, M.S., then age 13, told her aunt, S.S., then age 15, that she was sexually abused by her father, appellant. M.S. disclosed this information during a visit at S.S.'s family residence after S.S. confided that she also had been abused by appellant. The Wadena County Child Protection Agency was informed of the sexual abuse, and M.S. subsequently was interviewed by a social worker, a county deputy, and later was interviewed by an Anoka County investigator.

Based upon the information obtained from M.S., a complaint was filed and appellant was arrested. Shortly after his arrest, appellant spoke with a lieutenant from the Anoka County Sheriff's Department. After receiving his *Miranda* rights on two separate occasions, appellant admitted that his daughter's allegations were truthful. He agreed that her estimation of 20 instances of sexual abuse was correct. At the close of the statement, appellant also agreed that there had been no promises or threats, and that he voluntarily provided the statement.

Appellant claimed at trial that he lied during the statement to save his family. He testified that the lieutenant told him there would be only family counseling and therapy if he pleaded guilty. He claimed M.S. was fabricating the story because he had punished her on another matter five days earlier.

At trial, M.S. testified that the first instance of abuse occurred when she was in kindergarten. M.S. was sleeping one evening while her mother was at work when appellant entered the bedroom, lifted her nightgown, and removed her underpants. M.S. testified that appellant touched her "[v]agina my breasts and my butt," and that "[h]e just put his finger around the vagina hole and held it there and then out, but not all the way up." Appellant warned

M.S. that he would kill her if she told anyone about the incident.

A second example of abuse took place at age six or seven. As M.S. was cleaning her bedroom, appellant entered the room, pushed her into a crouched position, and removed her clothing. He slid his penis between the crack of her buttocks, while at the same time rubbing her breasts and vagina. Following the abuse, appellant reminded M.S. of his prior warning.

M.S. testified regarding a third occurrence when she was in the fifth grade. The sexual conduct was almost identical to the conduct M.S. testified occurred when she was age six or seven. M.S. testified that the last time appellant abused her was in the fifth or sixth grade. Appellant crawled into bed between M.S. and her six-year old sister, and touched M.S. over her pajamas in her vaginal and breast areas.

M.S. testified that there were other occasions when appellant touched her on the breast, vagina, and buttocks. She never testified as to penile penetration, but stated that appellant would place his fingers on her anus and in her vaginal area and that he would move his fingers between the folds of skin covering her vagina. At trial, appellant denied any instances of sexual conduct. On cross examination, M.S. admitted that she hated her father and resented his criticism. Additional cross examination revealed discrepancies with prior statements M.S. gave investigators.

The trial court granted the state's motion for the admission of *Spreigl* evidence regarding appellant's alleged sexual abuse of his younger sister S.S. The court ruled that the testimony was admissible under the exception for sex offenses, and that it showed a common scheme of sexual abuse.

Following the trial court's cautionary jury instructions, S.S. testified that she was first forced to engage in oral sex with appellant when she was 7 years old. When S.S. was approximately age 11, appellant attempted to have intercourse with her, and when she was approximately 12 or 13 he again forced her to engage in intercourse. She further testified that one time

when they were out in the woods with a family group, appellant lured her away, pulled down her pants, and stuck a bullet in and out of her vagina. The last incident of sexual abuse occurred on July 4, 1986, when she again was forced to have intercourse with appellant. He similarly threatened to kill S.S. if she told anyone about the abuse.

The state recalled the lieutenant who interviewed appellant to testify that appellant also admitted to sexually abusing S.S. Appellant denied having any sexual contact with S.S., and noted that she had problems with telling the truth. He claims cross examination of S.S. revealed that her testimony was retaliatory and both vague and inconsistent with earlier statements she gave to investigators.

The jury found appellant guilty of both first and second degree criminal sexual conduct. He was sentenced to a prison term of 45 months, and his motion for a judgment of acquittal or a new trial was denied.

## ISSUES

1. Were the trial court's jury instructions erroneous?

2. Did the trial court abuse its discretion by admitting *Spreigl* evidence of other incidents of sexual abuse?

3. Was the evidence sufficient to support the first and second degree criminal sexual abuse convictions?

4. Was the appellant's post-*Miranda* confession freely and voluntarily given?

5. Was the appellant denied his right to full and effective cross examination?

6. Did the trial court abuse its discretion in permitting the state to amend its complaint at the close of its case?

## ANALYSIS

1. Trial courts have broad discretion in determining the propriety of a specific jury instruction. *State v. Shatto*, 285 N.W.2d 492, 493 (Minn.1979). On review, the trial court's jury instructions are considered as

a whole. *State v. Daniels*, 361 N.W.2d 819, 831–32 (Minn.1985).

Appellant contends the trial court erroneously instructed the jury that to find him guilty of first degree criminal sexual abuse, they need only find that he sexually penetrated M.S. one time. It is his position that the specific type of first degree criminal sexual conduct charged in this case requires the jury to find multiple acts of sexual penetration over an extended period of time.

Minn.Stat. § 609.342, subd. 1(h)(v) provides:

A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:

\* \* \* \* \* \*

(h) the actor has a significant relationship to the complainant, the complainant was under 16 years of age at the time of the sexual penetration, and:

\* \* \* \* \* \*

(v) the *sexual abuse* involved *multiple acts* committed over an extended period of time.

(Emphasis added.)

The trial court defined the phrase mandating that "the sexual abuse involved multiple acts" as requiring only one act of penetration in addition to multiple instances of sexual contact or touching. The court thus instructed the jury as follows:

[I]t must have been proven that the sexual abuse involved multiple acts committed over an extended period of time.

*Sexual abuse includes prohibited sexual penetration and prohibited sexual contact or touching* as those prohibited acts are defined and will be throughout these instructions.

The term "sexual abuse" is not defined under Minn.Stat. §§ 609.341–609.351. Defining the term is complicated because first degree criminal sexual conduct focuses upon penetration of the victim, and because under other parts of Minn.Stat. § 609.342 an actor may be found guilty for only one act of penetration. *See, e.g.*, Minn.Stat.

§ 609.342, subd. 1(g). Under subdivision 1(h)(v), however, there must be a significant relationship, penetration, and multiple acts over an extended period of time. The resulting question is whether the focus of Minn.Stat. § 609.342 on penetration carries over to multiple instances of sexual abuse under subdivision 1(h)(v), thus requiring multiple acts of penetration.

The objective of statutory construction is to follow legislative intent. Minn.Stat. § 645.16 (1986). When the statutory language is not explicit, legislative intent may be ascertained by considering the former law, or laws upon similar subjects. *Id.* § 645.16(5). Originally, the language of Minn.Stat. § 609.342, subd. 1(h)(v) was codified separately as first degree intrafamilial sexual abuse. *See* Minn.Stat. § 609.3641 (Supp.1981). The first degree intrafamilial sexual abuse statute later was repealed and consolidated with the statutes covering criminal sexual conduct. *See* 1985 Minn. laws ch. 286, §§ 14–18.

The intrafamilial sexual abuse statute was similar to the present statute. It provided that a person violated the statute if that person had a familial relationship with a child, engaged in *sexual penetration* with that child, and "the *intrafamilial sex abuse involved multiple acts* committed over an extended period of time." Minn.Stat. § 609.3641, subd. 1(2)(e) (Supp. 1981) (emphasis added). The term "intrafamilial sex abuse" was specifically defined as "*sexual contact or sexual penetration, or both.*" Minn.Stat. § 609.364, subd. 10 (Supp.1981) (emphasis added). The statute did not require multiple acts of penetration. If an actor had committed one act of sexual penetration, the actor could be found guilty of first degree intrafamilial sex abuse upon a showing of multiple acts of either type (or *both*) of the two types of sexual abuse, sexual contact or sexual penetration.

The words and phrases of Minnesota statutes are construed according to their common and approved usage. Minn.Stat. § 645.08(1) (1986). Minn.Stat. § 609.342, subd. 1(h)(v) only requires multiple acts of

"sexual abuse," and does not specifically require multiple acts of penetration. If the legislature had intended to require multiple acts of penetration, such language could have been inserted in subdivision 1(h)(v). In a separate statutory section, Minnesota's mandatory reporting of maltreatment of minors statute, "sexual abuse" is defined as "any act which constitutes a violation of section 609.342, 609.343, 609.344, or 609.345." Minn.Stat. § 626.556, subd. 2(a) (1986). Thus, other statutory sections have defined sexual abuse in a broad manner, defining it to include sexual contact other than penetration.

Appellant claims the trial court has created a hybrid crime, consisting of a cross between first and second degree criminal sexual conduct. However, Minn.Stat. § 609.342 requires penetration for first degree criminal sexual conduct, whereas second degree criminal sexual conduct under Minn.Stat. § 609.343 requires only sexual contact, which relates primarily to the touching of intimate bodily parts. *See* Minn.Stat. § 609.341, subd. 11.

The trial court's instructions closely followed the elements necessary for first degree criminal sexual conduct as set out in Minn.Stat. § 609.342. The record indicates the trial court clearly explained the difference between sexual penetration and sexual contact, as well as the relation of these elements to the crime of first degree sexual conduct. Viewing the instructions as a whole, the legislative history, prior statutes, and language of Minn.Stat. § 609.342, subd. 1(h)(v), we find the trial court's instructions fail to constitute reversible error.

■ 2. The admission of evidence rests within the sound discretion of the trial court, and will be upheld unless there is a clear abuse of discretion. *State v. Ture,* 353 N.W.2d 502, 515 (Minn.1984). Evidence of prior sexual misconduct in cases involving crimes of sexual misconduct against minors is admissible to show a common scheme pursuant to Minn.R.Evid. 404(b).

■ The Minnesota Supreme Court has determined that in order for *Spreigl* evi-

dence to be admissible, the trial court must determine that (1) there is "clear and convincing" evidence that the defendant participated in the bad acts sought to be admitted; (2) the evidence of the bad acts is relevant and material; and (3) the probative value of the evidence outweighs the potential for unfair prejudice. *State v. Doughman,* 384 N.W.2d 450, 454 (Minn. 1986). Appellant contends that the testimony of alleged sexual misconduct with his younger sister should not have been admitted because the evidence was not clear and convincing, was irrelevant, and was too prejudicial.

■ First, the Minnesota Supreme Court has defined the "clear and convincing" evidence standard as requiring "more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978). Clear and convincing evidence is demonstrated when the truth of the facts sought to be admitted is "highly probable." *Id.* Although there were inconsistencies in M.S.'s testimony, the trial court was in the best position to weigh the credibility of the testimony and evidence presented. Further, appellant admitted to committing criminal sexual conduct with both girls, and was convicted of the crimes against S.S. in February of 1987. The trial court did not abuse its discretion in finding the evidence of prior sexual misconduct was clear and convincing.

Second, the greater the similarity of a crime with the crime charged in terms of time, place, or modus operandi, the greater the chance the crime will be found relevant. *State v. Matteson,* 287 N.W.2d 408, 411 (Minn.1979). This court frequently has upheld the use of *Spreigl* evidence in cases of criminal sexual misconduct which demonstrated the defendant engaged in similar sexual misconduct with other victims. *See State v. McCoy,* 400 N.W.2d 807 (Minn.Ct. App.1987); *State v. Spencer,* 366 N.W.2d 656 (Minn.Ct.App.1985); *State v. Danielski,* 374 N.W.2d 322 (Minn.Ct.App.1985).

The similarities in this case involve abuse beginning when both girls were 6 or 7, and

continued until their early teens. The instances of sexual misconduct also occurred over roughly the same time periods. Both girls testified they were fondled, penetrated, and threatened with death if they told anyone about the abuse. The trial court did not abuse its discretion in finding the sexual misconduct with S.S. was relevant.

Finally, the trial court has broad discretion in determining if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Filippi*, 335 N.W.2d 739, 744 (Minn.1983). The trial court gave specific cautionary instructions regarding the *Spreigl* evidence. We find the trial court did not abuse its broad discretion in finding the probative value of the *Spreigl* evidence outweighed any potential for unfair prejudice.

3. Appellant also contends the evidence was insufficient to support the convictions. Upon review of a claim of insufficiency of the evidence, an appellate court must determine whether, given the facts in the record and the legitimate inferences which may be drawn from those facts, a jury reasonably could conclude that the defendant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). If the jury, acting with due regard for the presumption of innocence and the need to show guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, the verdict will not be reversed. *Id.*

■ The testimony of a complainant in a criminal sexual conduct case need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1986). Corroboration of a child's allegations is required "only if the evidence otherwise adduced is insufficient to sustain conviction." *State v. Myers*, 359 N.W.2d 604, 608 (Minn.1984). M.S. testified in significant detail. Her testimony not only was corroborated by appellant's confession, but by the testimony of her aunt, and the testimony of M.S.'s best friend, who stated that M.S. had told her of the sexual abuse long before it was reported. Although appellant claims the girls gave inconsistent, vague testimony in direct contrast to his testimony, it is the exclusive function of the jury to weigh witness credibility.

*State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980).

■ In addition, "sexual penetration" is defined by Minn.Stat. § 609.341, subd. 12 (1986) as "any intrusion however slight into the genital or anal openings of the complainant's body of any part of the actor's body." M.S. testified that when appellant touched her genital area, he would rub his fingers between the folds of skin over her vagina, but not insert his fingers "all the way." We find there was sufficient evidence for the jury to reasonably find penetration.

■ As to appellant's claim that evidence of the date of the last instance was insufficient, M.S. testified the last act occurred when she was in fifth or sixth grade. Count II of the complaint alleged the last act occurred "on about 1985 through June 1986." M.S. was in the sixth grade during the 1985–86 school year. The jury reasonably could have concluded that appellant committed the offense on the dates listed in the complaint.

4. Appellant's fourth contention is that his statement admitting guilt was inadmissible because it was not made of his own free volition. He asserts that the confession was given to save his family after he was told a guilty plea would result only in counseling and therapy.

■ An inculpatory statement only is admissible if it was voluntarily given. *State v. Orscanin*, 283 N.W.2d 897, 899 (Minn.1979). The prosecution has the burden of proving by a preponderance of the evidence that under the circumstances a confession was made freely and voluntarily. *State v. Linder*, 268 N.W.2d 734, 735–36 (Minn.1978) (per curiam). An appellate court must independently determine, on the basis of all factual findings that are not clearly erroneous, whether or not the confession was voluntary. *State v. Anderson*, 396 N.W.2d 564, 565 (Minn.1986).

■ Only 30–45 minutes after his arrest, appellant met with the interviewing officer, was informed of the charges, and was read his rights in conformance with

*Miranda.* Appellant waived his rights. The taped interview began with a second *Miranda* warning, which appellant once again stated he understood and waived. Following the interview, he agreed there had been no threats or promises, and that the statement was given voluntarily. The officer testified that he made appellant no promise of treatment for a guilty plea and confession. Viewing the totality of the circumstances, we find the trial court properly ruled that the state demonstrated by a fair preponderance of the evidence that the statement and waiver of rights was knowing, intelligent, and voluntary.

5. Appellant next claims the court impermissibly denied his constitutional right to effectively cross examine M.S. regarding "penetration." On cross examination, defense counsel asked M.S. to define penetration, and then asked her to testify whether she was penetrated by appellant. The trial court refused to allow this line of questioning, holding that the issue of "penetration" ultimately was a fact question for the jury. The court held that M.S. was not at trial to testify as to legal definitions, but merely to testify in the form of facts and observations.

The trial court has broad discretion in determining the admissibility of evidence. *Ture,* 353 N.W.2d at 515. Despite the broad discretion given the trial court, we are disturbed by the trial court's limitation of cross-examination. Counsel traditionally is given considerable leeway in cross examination, short of questions which harass or are repetitive. Here, defense counsel obtained a damaging admission from M.S. that she had not been penetrated. Minn.R. Evid. 704 provides that testimony "is not objectionable because it embraces the ultimate issue to be decided by the trier of fact."

However, given the totality of the evidence, we are unable to rule that the trial court's action constituted reversible error. Appellant's counsel was not prevented from cross examining M.S. about the acts appellant allegedly committed. M.S. was cross examined and testified in detail about the instances of sexual misconduct, including where appellant placed his fingers and penis in relation to M.S.'s body.

6. Appellant's final contention is that the trial court abused its discretion in permitting the state to amend and extend the dates listed in count II of the complaint. Minn.R.Crim.P. 17.05 allows the trial court to amend a complaint "any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Allowing amendments to complaints rests within the sound discretion of the trial court. *Gerdes v. State,* 319 N.W.2d 710, 712 (Minn.1982).

Generally, where the date is not an essential element of the crime, the trial court may allow an amendment of the complaint so that it comports with the evidence presented at trial. *State v. McGunn,* 208 Minn. 349, 350, 294 N.W. 208, 209 (1940). Minn.Stat. § 609.343, subd. 1(g), does not make a particular time period a material element of second degree criminal sexual conduct. The amendment did not change any elements of the crime or add an offense. Appellant was well aware he was charged with committing sexual misconduct over an extended time period. The trial court did not abuse its broad discretion in allowing the state to amend its complaint.

## DECISION

The trial court's jury instructions were not erroneous. The trial court did not abuse its discretion in admitting *Spreigl* evidence, and the evidence was sufficient to support both first and second degree criminal sexual abuse convictions. In addition, appellant's confession was freely given, and he was not denied the right to full and effective cross examination. Finally, the trial court did not abuse its discretion in permitting the state to amend its complaint.

Affirmed.

RANDALL, Judge, concurring specially,

I concur in the result but wish to address issue five, namely a criminal defendant's

right to confront and cross examine the witnesses against him.

The majority correctly criticizes the trial court for limiting appellant's right of cross examination of the victim on the key issue of whether or not she was penetrated. Penetration is the sine qua non of first degree criminal sexual conduct, the most serious charge that appellant was found guilty of. Minn.Stat. § 609.342, subd. 1 (1986). I find the trial court's restriction on appellant's right to cross examine the victim clear error, but not reversible error, only because, although appellant's attorney could not use the term "penetration," he was given some leeway to cross examine the victim about appellant's actual movements and acts.

During the cross examination of the victim, appellant's attorney asked whether she was stating that appellant did not penetrate her. The victim answered "Yes." When the prosecution objected, the trial court sustained the objection and directed appellant's attorney to ask the question in another way. The question was then asked, "Is it your testimony that your father has not penetrated you?" She answered, "Yes." Then, after another answer by the victim indicating that her understanding of penetration was someone sticking something into her, the trial court intervened on its own and said:

Here, strike that answer and the jury will disregard it. I said don't ask that question. I guess I should have stated it more clearly. That ultimately becomes a question for the jury based on all the evidence they'll hear in the case and based on the instructions the court will give.

This witness is here not to give legal definitions; she's here to testify to the best of her knowledge as any witness is as to what she saw, heard, observed. All right? She should be testifying in the language of facts, observations, not in the language of legal conclusions. That's what I meant. The answer is stricken.

The trial court's interruption was unfounded and based on the "ultimate issue objection" which is no longer the rule in Minnesota. Minn.R.Evid. 704 and committee comments.

At the time of the trial, the 14 year old victim was competent to testify that appellant did or did not "stick" anything into her, and whether she thought she was penetrated.

It is true that juries ultimately vote on the issue of guilty or not guilty, not the victims. However, the attorney's question on cross examination was perfectly proper. Having elicited a negative answer that went right to the heart of the charge, he should have been allowed reasonable latitude to pursue it. Had the reverse situation arisen, and a 14 year old victim testified that she was penetrated, the trial court would properly have allowed this witness to so testify, even over a defendant's objection, as long as there was foundation by the prosecution that the victim understood the term. With charges of first and third degree criminal sexual conduct, in which penetration is an indispensable ingredient, the prosecution routinely is allowed to ask the victim about penetration, providing a basic foundation as to the understanding of terms is present. The trial court's restriction here on appellant's right to cross examine and confront his accuser was improper. However, since appellant's counsel was allowed to cross examine the victim about acts which appellant was alleged to have committed, we do not find reversible error.