**STATE of Minnesota, Respondent,**

v.

**Otha Eric TOWNSEND, Appellant.**

No. C9–94–2632.

Supreme Court of Minnesota.

April 26, 1996.

John M. Stuart, State Public Defender, Sharon E. Jacks, Asst. State Public Defender, Minneapolis, MN, for appellant.

Hubert H. Humphrey III, Atty. Gen., Susan Gaertner, Ramsey County Atty., Michele L. Timmons, Asst. Ramsey County Atty., St. Paul, MN, for respondent.

## OPINION

GARDEBRING, Justice.

Appellant Otha Eric Townsend was convicted of first-degree murder for the killing of Candis Koch–Wilson. Minn.Stat. § 609.185 (1994). On appeal he argues that certain evidence was erroneously admitted and therefore a reversal of his conviction is required and a new trial must be granted. We affirm his conviction, concluding that admission of certain contested evidence, though error, was harmless beyond a reasonable doubt.

In the fall of 1992, Koch–Wilson lived in St. Paul, with her husband and daughter. Lisa M. Johnson was a neighbor and friend. Johnson testified at the trial that she and Koch–Wilson made plans to go out the evening of October 30, 1992, and met at a neighborhood bar around 9:30 p.m. that night. When their plans for the evening fell through, Johnson left the bar and went home.

Johnson testified that at about 1:30 a.m. on October 31, 1992, Koch–Wilson brought Townsend to Johnson's home to sample and possibly purchase marijuana. After Townsend and Koch–Wilson sampled the marijuana, a deal was struck. Koch–Wilson left with Townsend to go to a nearby automatic teller machine in order to obtain cash for the purchase.

Johnson further testified that Townsend returned alone about ten minutes later and she let him in. Johnson got the marijuana and headed downstairs to her living room to place the marijuana in a bag. She awoke some time later on her couch bleeding and having difficulty breathing. A neighbor called 911 and the police and paramedics arrived on the scene just before 3:00 a.m. Johnson was questioned briefly, given first-aid and taken to the hospital. Police officers testified at trial that several days after her assault, Johnson identified Townsend from a photo display as her assailant.

At approximately 4:00 a.m., October 31, 1992, a newspaper carrier driving in St. Paul's Highland Park area discovered a body, later identified as Koch–Wilson. The Ramsey County Medical Examiner estimated her time of death between 2:20 a.m. and 2:40 a.m., October 31, 1992.

Several days after the murder, an automobile registered to Townsend was found abandoned and on fire on a remote road in Eagan. An arson investigator determined the fire had been started in the back seat area by an accelerant. Blood was found behind the front passenger seat of the car. A DNA analysis performed by the Bureau of Criminal Apprehension (BCA) showed the blood to be consistent with that of Koch–Wilson. Additionally, police searched the apartment of Townsend's girlfriend where they found clothing, a duffle bag, letters and papers belonging to Townsend. After obtaining a search warrant, police found ammunition

boxes, including .25 ACP caliber ammunition, inside the duffle bag.

A drinking glass from the Johnson assault scene revealed Townsend's fingerprints as well as those of Koch–Wilson. Bullets from Koch–Wilson's body and from the Johnson attempted murder scene were analyzed and found to be .25 ACP caliber. The bullets were the same type of ammunition found in the duffle bag belonging to Townsend, but testing was not conclusive enough to prove they came from the same cartridge box. Appellant did not report to his job after October 30, 1992, and police efforts to find him were unsuccessful. He was finally apprehended living under an assumed name in a homeless shelter in Dallas, Texas, and returned to Minnesota approximately one year after the crimes took place.

A grand jury indicted him on four felony counts: one count of first-degree murder pursuant to Minn.Stat. § 609.185 (1994), one count of second-degree murder pursuant to Minn.Stat. § 609.19 (1994) in the death of Koch–Wilson, and two counts of attempted murder pursuant to Minn.Stat. § 609.17 in the assault on Johnson. After pleading not guilty, appellant moved to sever the trials to prevent bias. Appellant moved to suppress all evidence relating to the Johnson attempted murder.[1] The trial court denied the motion and determined that some evidence relating to the Johnson attempted murder might be admitted for the limited purpose of proving identity and motive.

As part of its case, the prosecution presented certain evidence related specifically to the attempted murder of Johnson. In addition to the extensive testimony of Johnson herself as to events on the night of October 30, six witnesses (police, paramedics and neighbors) testified to the appearance of the crime scene and to Johnson's appearance and wounds after the assault, including the fact that she was pregnant. Further, large, color photographs of the attempted murder scene were admitted. The testimony and photographs of the crime scene demonstrated that a bloody and brutal assault had taken place

there. Cautionary instructions were given to the jury prior to Johnson's testimony and again during final jury instructions that the testimony was being admitted for the limited purpose of showing identity. Appellant's defense theory was that there were two other men who could have possibly committed the murder of Koch–Wilson and the attempted murder of Lisa Johnson.

■ Appellant argues, in sum, that all evidence related to the assault on Johnson was erroneously admitted and that it so prejudiced the jury that he was denied a fair trial. His argument stems from what he characterizes as the inconsistent rulings regarding evidence of the Johnson offense. As noted above, the trial court granted a motion to sever the two charges for trial, but nevertheless admitted certain evidence pertaining to the Johnson offense into the Koch–Wilson murder trial. Thus, we begin our analysis with the issue of severance.

■ While joinder of related offenses is the general rule, Minnesota rules allow the defendant to seek separate trials for offenses charged in the same indictment if

(a) the offenses or charges are not related;

(b) before trial, the court determines severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense or charge * * *.

Minn.R.Crim.P. 17.03, subd. 3(1).

Here, in support of his severance motion, appellant argued both that the offenses were improperly joined because they did not arise from the same behavioral incident and that, even if the offenses were properly charged, severance was necessary to promote a fair determination of appellant's guilt or innocence. The trial court did not rule on whether the charges were unrelated, but based its severance determination on its concerns about "fundamental fairness and due process to the defendant."

This court has said that severance may be necessary where "substantial prejudice" would result from the joinder of claims, even

---

**1.** After his first-degree murder conviction, Townsend pleaded guilty to attempted murder in the second degree in the Johnson assault. He was sentenced to 153 months, to run consecutive to the first-degree murder conviction for the Koch–Wilson killing.

where related. *State v. Hathaway,* 379 N.W.2d 498, 502 (Minn.1985); *State v. Eaton,* 292 N.W.2d 260, 266–67 (Minn.1980); *State v. DeFoe,* 280 N.W.2d 38, 40 (Minn.1979). Further, in *United States v. Foote,* 920 F.2d 1395 (8th Cir.1990), *cert. denied sub nom. Gardiner v. United States,* 500 U.S. 946, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991), the Eighth Circuit held that "the ultimate question in a severance claim at trial and on appeal is one of prejudice." *Id.* at 1401. However, severing the charges into separate trials does not preclude the court from bringing evidence of one charge at the trial of another. *Id.* In *United States v. Rossbach,* 701 F.2d 713 (8th Cir.1983), *cert. denied* 498 U.S. 827, 111 S.Ct. 83, 112 L.Ed.2d 56 (1990), the court held that the district court did not err in failing to sever the trials. It said, further, that even if the trial court had severed the charges, "evidence of each crime would have been admissible in the trial of the other * * *." *Id.* at 719. If evidence of one crime may be admissible in the severed trial of another crime, surely it is also admissible where severance was not necessary. Here we conclude that severance was not required but was, of course, not improper either.

 However, even if severance was not required, the complained of evidence may not have been properly admitted. Minn.R.Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence * * * more probable * * * than it would be without the evidence." Minn.R.Evid. 402 states that "[a]ll relevant evidence is admissible." In addition, there are special rules for what is commonly called "other crime" evidence. In *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965), we determined that evidence relating to offenses that were a part of the "immediate episode for which defendant is being tried" may be admissible. Id., 139 N.W.2d at 173. Further, *Spreigl* also allows the admission of evidence of other crimes or "bad acts," not part of the "immediate episode," for certain limited purposes. *Id.* These limited uses are further defined in Minn.R.Evid. 404(b) to include motive, intent and the identity of the accused. *Id.* Thus, the evidence relating to the Johnson attempted murder might have been admitted proper-

ly as "immediate episode" evidence, as allowed by *Spreigl,* or as "bad acts" evidence admissible for the limited purpose of showing motive, intent or identity under Minn.R.Evid. 404(b).

In this case, the precise basis of the trial court's ruling on admission of evidence related to the Johnson assault is not clear. At one point, the court refers to admissibility on the basis of "motive," at another point on the basis of "identity." We conclude that the evidence was admissible either as "immediate episode" evidence, pursuant to *Spreigl* or as "other crime" evidence relevant to the issue of identity or motive, pursuant to Minn. R.Evid. 404(b). The two incidents were close in time and place, a single criminal objective could be inferred from the facts, and appellant's interest in eliminating evidence of his contact with Johnson could have been a motive for the murder.

 We next turn to the issue of prejudice, for even though relevant and admissible, other crime evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice * * *." Minn.R.Evid. 403. In *State v. Cermak,* 365 N.W.2d 243 (Minn.1985), we defined "prejudice" to mean only "the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Id.* at 246 n. 2 (quoting 22 G.Wright & K. Graham, Federal Practice and Procedure—Evidence § 5215 (1978)). Appellant argues that even if some of the evidence were relevant, its provocative nature prejudiced the jury. In particular, appellant argues that the trial court should have excluded the extensive testimony pertaining to the Johnson crime scene and the nature of her injuries, along with the evidence of her pregnancy. We agree. If evidence relating to the Johnson attempted murder was relevant to either motive or identity, a description of the crime scene may have been helpful. Several additional descriptions, plus a host of photos, could do nothing but inflame the jury improperly. Similar cumulative evidence of Johnson's injuries, along with evidence of her pregnancy, also should have been excluded. Admission of evidence of Johnson's pregnan-

cy, along with the repetitious evidence of the crime scene and of her injuries, was error.

■ However, not every erroneous admission of evidence requires reversal and the granting of a new trial. Since 1973, this court has held that when a constitutional right is at stake, in order for trial court error to be harmless, this court "must be able to declare a belief that it is harmless beyond a reasonable doubt." *State v. Roberts,* 296 Minn. 347, 353, 208 N.W.2d 744, 747 (1973). "Harmless beyond a reasonable doubt" does not mean there must be absolutely no doubt of guilt, rather it means that the weight of all the other evidence is such that it "justifies the verdict regardless of the erroneous admission * * *." *State v. Ford,* 539 N.W.2d 214, 227 (Minn.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1362, 134 L.Ed.2d 529 (1996).

■ "[The defendant's] burden is to demonstrate that, despite viewing the evidence in a light most favorable to the government and drawing all reasonable inferences to support the jury's verdict, the jury could still have entertained a reasonable doubt as to his guilt." *Foote,* 920 F.2d at 1401. "We have a natural hesitation to reverse a conviction on errors * * * in the admission of evidence, where the evidence of guilt is strong * * *, [b]ut to reach the conclusion[ ] that the errors were without prejudice we must hold that the guilt of defendant was conclusively proven." *State v. Flowers,* 262 Minn. 164, 168, 114 N.W.2d 78, 81 (1962) (quoting *State v. Hutchison,* 121 Minn. 405, 409, 141 N.W. 483, 484 (1913)).

■ Townsend contends that the state cannot show the verdict was not erroneously and prejudicially influenced by the evidence of the Johnson attempted murder crime scene. Thus, he argues, the error of its admission is not harmless beyond a reasonable doubt and a reversal is required in the interest of justice. We disagree.

Setting aside the erroneously admitted evidence, we conclude that the state has provided a strong case of appellant's guilt. That case includes the following:

1) evidence that blood found on the floor of the back seat of a car registered to Townsend matched the blood of the victim;

2) evidence that several people, including the victim's husband, saw Townsend with the victim on the night of her death;

3) evidence that Townsend was the last person to see the victim alive, not more than 60 minutes before her estimated time of death;

4) evidence that the ammunition found in a duffle bag belonging to Townsend was of the same caliber and brand as that taken from the bodies of Johnson and Koch–Wilson;

5) evidence that appellant did not return to his job after the murder, fled the state and was found nearly a year later in Texas, living under an assumed name.

We liken the evidence of Johnson's pregnancy, her physical condition after the assault, and the condition of her apartment to that considered in *State v. Loebach,* 310 N.W.2d 58 (Minn.1981). In *Loebach,* the trial court admitted evidence of "the battering parent syndrome." *Id.* at 64. While we found that evidence to have been erroneously admitted, because the "testimony consisted of only a small percentage of the evidence * * * [and] there was overwhelming evidence of * * * guilt even without [that evidence]" we held the error was harmless. *Id.* at 64. So too, in this case, the prejudicial evidence was only a small portion of that admitted. The other evidence of Townsend's involvement was so overwhelming as to lead a reasonable jury to arrive at the verdict even without the prejudicial evidence. Thus, we find, that although there was error in the admission of some of the evidence of Johnson's attempted murder, that error was harmless beyond a reasonable doubt. The conviction is affirmed.

Affirmed.