**STATE of Minnesota, Respondent,**

v.

**Aaron David KATES, Appellant.**

**No. C3–98–1467.**

Court of Appeals of Minnesota.

July 27, 1999.

Review Granted Sept. 28, 1999.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, and Ross E. Arneson, Blue Earth County Attorney, Mankato, for respondent.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by DAVIES, Presiding Judge, RANDALL, Judge and ANDERSON, Judge.

## OPINION

RANDALL, Judge.

A jury convicted appellant of one count of criminal sexual conduct in the fourth degree pursuant to Minn.Stat. § 609.345, subds. 1(b), 2 (1996) and two counts of criminal sexual conduct in the third degree pursuant to Minn.Stat. § 609.344, subds. 1(b), 2 (1996). On appeal, appellant argues the district court committed reversible error when it denied his motion to sever and separately try the offenses. We reverse and remand.

## FACTS

On May 30, 1997, 13–year–old C.L. and her friend, 15–year–old T.H., went to appellant Aaron David Kates' apartment. Both girls had been drinking alcohol and smoking marijuana and they continued drinking after their arrival. C.L. played a computer game, then passed out on the couch. At approximately 3:30 a.m., Kates came out of his bedroom and asked C.L. if she had a condom. C.L. gave Kates a condom from her purse. She testified that Kates "was coming on to [her]" and rubbed his penis on her face. C.L. turned over to face away from Kates, and he left. Later that morning, Kates woke C.L. up, put her on the floor, and had sexual intercourse with her.

T.H. slept in the bedroom with Kates that night, but did not have sex with him; however, she did have consensual sex with Kates approximately twice in April 1997. T.H. testified that Kates left the bedroom twice while she was there. T.H. also testified that C.L. told her Kates raped her

and put his penis in her face. These facts form the basis for the charges involving one victim.

The second set of facts forms the basis for the charges involving a second victim. J.S. was 15 years old in January 1997, when she attended an apartment party with her friend T.L., who was 16 years old at the time. J.S. and C.L. are sisters. Both J.S. and T.L. were drinking alcohol. J.S. started talking with Kates, who urged her to come down a hallway into a bedroom. Kates shut the door and turned off the light. They kissed, but J.S. told Kates she did not want to have sex. Kates began to undo his pants and pushed J.S.'s head down towards his penis. J.S. stood up to leave, but Kates pushed her down to the floor and began to kiss her breasts. At that point, someone knocked on the door, and J.S. was able to walk out.

J.S. went looking for her friend T.L. T.L. was in the bathroom fixing her makeup and hair. Kates followed J.S. into the bathroom. Kates shut off the light and tried to kiss J.S. again. T.L. testified that when she was in the bathroom with Kates and J.S., Kates tried to push her head toward his exposed penis. T.L. then left J.S. and Kates in the bathroom together. J.S. again told Kates that she did not want to have sex, but eventually she gave in and let Kates take off her pants and underwear. Kates then had sexual intercourse with J.S. Soon afterwards, J.S.'s mother came looking for the girls and forced them to leave the apartment.

Kates, a 24–year–old student, admitted he was at the January party, but denied any contact with T.L. or J.S. He did remember that the two girls attended the party.

As to the April and May incidents, Kates admitted he knew T.H., but denied knowing C.L's name. He denied having sex with either of the girls. He stated that on May 30, 1997, he allowed T.H. and C.L. to use his phone and he gave them some ice, but claimed that was the extent of the contact. Amy Cooper, Kates' ex-girlfriend, testified Kates spent the night at her apartment on May 30, 1997, but left for approximately ½ hour around midnight.

On September 29, 1997, Kates was charged with: (1) one count of third-degree criminal sexual conduct involving T.H.; (2) two counts of third-degree criminal sexual conduct involving J.S.; (3) two counts of fourth-degree criminal sexual conduct involving J.S.; (4) one count of third-degree criminal sexual conduct involving C.L.; and (5) one count of indecent exposure involving T.L.

Kates filed a motion to sever the counts involving T.H. and C.L. (alleged assaults in April and May 1997) from the rest of the complaint, which involved J.S. and T.L. (alleged assaults during the January 1997 party). The trial court denied the motion to sever the complaint.

A jury convicted Kates of criminal sexual conduct in the third and fourth degree involving J.S. and criminal sexual conduct in the third degree involving T.H. Kates was acquitted of the remaining four counts. Kates was sentenced to two consecutive stayed sentences of 18 months on the condition that he would serve probation for five years, 180 days on one count and 185 on the second count, undergo sex offender evaluation, register as a sex offender, and pay a fine.

## ISSUES

1. Did the district court err by joining the alleged offenses in April and May 1997 involving C.L. and T.H. with the alleged offenses in January 1997 involving J.S. and T.L.?

2. If the district court erred, was the error harmless?

## ANALYSIS

### I. Joinder

 Kates argues the district court erred by joining the offenses involving C.L. and T.H. with the offenses involving J.S. and T.L. We agree, and respondent does not disagree. Minnesota rules allow

the defendant to seek separate trials for offenses charged in the same complaint if the offenses are not related. *State v. Townsend*, 546 N.W.2d 292, 295 (Minn. 1996); Minn. R.Crim. P. 17.03, subd. 3(1)(a). Joined offenses *must be part of a single behavioral incident* or course of conduct. *See State v. Conaway*, 319 N.W.2d 35, 42 (Minn.1982) (noting comments to Minn. R.Crim. P. 17.03 adopt provisions of Minn.Stat. § 609.035 (1980) as to when offenses arise from single course of conduct). This court reviews the district court's finding as to whether incidents constitute a single behavioral incident under a clearly erroneous standard. *Effinger v. State*, 380 N.W.2d 483, 489 (Minn.1986). Factors to be considered include: (1) whether a defendant is motivated by a single criminal objective; and (2) the unity of time and place of the behavior. *State v. Bookwalter*, 541 N.W.2d 290, 294 (Minn.1995).

■ At the December 30, 1997, hearing during which the district court considered the motion to sever the complaint, there was some confusion as to which witnesses would be called during which trial. Although the district court denied the motion to sever the complaint, it did not determine that the alleged assaults were part of the same behavioral incident. The record shows the alleged assaults occurred months apart, involved different victims, and witness accounts of each incident do not overlap. The alleged assaults at the January 1997 party involved J.S. and T.L. The alleged assault in May involved C.L. where T.H. was a witness. The district court clearly erred when denying severance. The alleged assaults in January 1997 were not part of the same behavioral incident as the alleged assault in May 1997 and the criminal sexual conduct in April 1997. The state concedes this much but argues harmless error.

## II. Harmless Error

■ Kates argues that the error of joining unrelated offenses was prejudicial. The state argues that severance of criminal charges does not always preclude the court from bringing in evidence of one criminal charge at the trial of another. *See Townsend*, 546 N.W.2d at 296 (stating severing charges into separate trials does not preclude admitting evidence of one charge at trial of another). Evidence of other crimes or "bad acts" may be admitted, even if not part of the "immediate episode," for certain limited purposes. *Id.* (citing *State v. Spreigl*, 272 Minn. 488, 497, 139 N.W.2d 167, 173 (1965)). These limited purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). Thus, the state argues that since the different incidents could have been *"Spreigled"* into the other trial, the error was harmless.

First, Kates argues that under *Spreigl*, evidence of the alleged assaults in April and May 1997 would not have been admissible at a trial involving the alleged January 1997 assaults. We conclude he might have lost that argument if there had been separate trials, as he requested (but, most importantly, it is an issue we do not have to reach). Courts have, in the past, admitted evidence of sexual misconduct, not part of the "immediate episode," in cases involving sex crimes against minors to show a common scheme. *See State v. Shamp*, 422 N.W.2d 520, 525–26 (Minn.App.1988) (affirming district court's admission of sexual abuse testimony by victim's younger sister), *review denied* (Minn. June 10, 1988); *State v. Spencer*, 366 N.W.2d 656, 660 (Minn.App.1985) (affirming district court's admission of sexual abuse testimony by defendant involving two other minor female children), *review denied* (Minn. July 11, 1985). If the charges had been severed, evidence of the alleged assaults in April or May 1997 may have been admissible as *Spreigl* evidence at a trial concerning the January 1997 assaults. *However,* courts admitting *Spreigl* evidence give cautionary instructions to avoid undue weight on this evidence. *See State v. Slowinski*, 450 N.W.2d 107, 114–15 (Minn.1990) (noting judge read cautionary instructions to jury before testimony and at close of en-

tire case which lessened probability of undue weight being given to evidence); *State v. Orfi*, 511 N.W.2d 464, 471 (Minn.App. 1994) (stating district court minimized prejudice by narrowly limiting scope of testimony and giving cautionary instruction at time evidence was admitted and at close of trial), *review denied* (Minn. Mar. 15, 1994). Here, Kates received no such protective cautionary instruction. Thus, the state's analogy to *Spreigl* fails. If testimony regarding the May 1997 incident had been admissible in a separate trial for the January 1997 incident, the district court would have had to provide the required cautionary instructions both before the testimony and during the jury instructions. With these required cautionary instructions missing in this joint trial, the error and the prejudice to appellant is compounded.

We note that if a district court wants to join separate and unrelated incidents, it should create a strong record beforehand (not simply create one afterwards to justify a conviction) to show why joinder should be permitted and why it needs to be permitted. It should set forth the benefit to the administration of justice and, most importantly, indicate the lack of prejudice to the defendant, who enjoys a rebuttable presumption that unrelated criminal offenses should not be joined in one trial.

The prejudicial impact flowing from the joinder of unrelated criminal offenses is well recognized.

> [T]he joint trial of offenses creates a significant risk that the jury will convict the defendant upon the weight of the accusations or upon the accumulated effect of the evidence. The defendant can also be disadvantaged if the available defenses are inconsistent or if the defendant wants to testify as to one offense but not as to others. The combined impact of the minimum advantage to the government [of joining unrelated offenses] and the risk of substantial disadvantage to the defendant has led to an understandable reluctance to permit the joinder of unrelated offenses.

II ABA Standards for Criminal Justice § 13–2.1 commentary at 13–13 (2d ed.1980) (citations omitted).

The supreme court has defined "prejudice" as " 'the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means.' " *State v. Cermak*, 365 N.W.2d 243, 247 n. 2 (Minn. 1985) (quoting 22 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5215, at 274–75 (1978) (footnote omitted)). If the trials had been correctly severed, for example, evidence of the May 1997 sexual assault during the trial involving the January 1997 sexual assault may have been admissible as *Spreigl* evidence, *but would have been subject to Spreigl procedural protections*.

This case essentially consisted of Kates' word against each alleged victim. For example, C.L.'s testimony during the trial involving J.S. was prejudicial because it was unrelated and it indicated to the jury that Kates' was a predator of young girls. *See Townsend*, 546 N.W.2d at 296 (stating evidence was prejudicial and erroneously admitted, even though evidence could be properly admitted via *Spreigl* ); *cf. State v. Profit*, 591 N.W.2d 451, 461 (Minn.1999) (stating evidence was not prejudicially erroneous and could have been legitimately admitted under Minn. R. Evid. 404(b)), *pet. for cert. filed* (U.S. June 15, 1999). Further, if the cases had been correctly severed, and Kates had not been found guilty on the count involving C.L., her testimony could not have been used in subsequent trials. *See State v. Wakefield*, 278 N.W.2d 307, 308–09 (Minn.1979) (holding act for which defendant was acquitted cannot be used as *Spreigl* evidence).

■ Kates argues the prejudicial evidence was not harmless. *See State v. Roberts*, 296 Minn. 347, 353, 208 N.W.2d 744, 747 (1973) (stating court must be able to declare belief that error is harmless beyond reasonable doubt). We agree. Appellate courts consider the impact of error on the verdict. *State v. Juarez*, 572 N.W.2d 286, 291 (Minn.1997).

The overwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict.

*Id.* (footnote omitted); *see id.* at 291 n. 6 (noting *Townsend* misstated significance of strength of evidence of guilt in harmless error analysis). In rendering this decision, the court does not analyze whether a jury would have convicted the defendant without the prejudicial error, but must look "to whether the error reasonably could have impacted upon the jury's decision." *Id.* at 292.

A thorough review of the evidence reveals that the state's case falls squarely upon the credibility of Kates and the alleged victims. Kates' defense to all the counts was that he never had sexual contact with any of the girls. The jury had to decide whether they believed the alleged victims or whether they believed Kates, as there was no physical evidence to corroborate the victims' testimony. *See Roberts*, 296 Minn. at 353, 208 N.W.2d at 747 (holding error was sufficiently prejudicial where jury had to determine whether they believed defendant or victim, where there were conflicts in testimony of both defendant and victim, and no eyewitnesses testified); *cf. Juarez*, 572 N.W.2d at 293 (holding error harmless where credibility determination did not hinge solely on whether jury believed defendant or victim).

Here, the state did not present a strong case of Kates' guilt. *Cf. Townsend*, 546 N.W.2d at 297 (stating evidence was admissible despite prejudice where state provided strong case of defendant's guilt). Part of the state's argument to the court, in opposing Kates' motion to sever, was its argument that *each separate case would get stronger if tried together.*

The state explicitly sought joinder to bolster the weakness of each case by trying it with the other so that Kates' character would be put in issue whether he took the stand or not. Here, the testimony of C.L. and T.L. could reasonably have influenced the jury's decision to convict Kates on the counts involving J.S. or T.H. *See Roberts*, 296 Minn. at 353, 208 N.W.2d at 747–48 (holding error was sufficiently prejudicial to warrant new trial); *see also Maurer v. Department of Corrections*, 32 F.3d 1286, 1290-91 (8th Cir.1994) (reversing because error was not harmless where vouching testimony was used to bolster victim's credibility); *State v. Shannon*, 583 N.W.2d 579, 586 (Minn.1998) (reversing and remanding for new trial due to admission of prejudicial evidence where state's case was weak).

We cannot conclude that the testimony by C.L. and T.L. was harmless error on the counts involving J.S. and T.H. We reverse the conviction and remand for separate trials of the charges involving J.S. and T.H on which the jury entered guilty verdicts.

## DECISION

Joinder of offenses involving C.L. and T.H. with the offenses involving J.S. and T.L. was error. Further, it was substantially erroneous since the prejudicial testimony had the likelihood of influencing the jury's decision to convict Kates.

**Reversed and remanded.**