**STATE of Minnesota, Respondent,**

v.

**Lyle Joseph NYSTROM, Appellant.**

**No. C7–98–1259.**

Supreme Court of Minnesota.

June 24, 1999.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Atty. Gen., St. Paul, Amy J. Klobuchar, Hennepin County Atty., Patrick C. Diamond, Asst. County Atty., Minneapolis, for respondent.

## OPINION

### RUSSELL A. ANDERSON, J.

Appellant, Lyle Joseph Nystrom, was convicted of first-degree premeditated murder for the killing of Sam Caffey and was sentenced to life in prison. On appeal, appellant argues that the trial court erred by sustaining the prosecutor's objection to testimony from appellant's expert concerning crime statistics and criminal activity in the community where the murder occurred. Appellant offered this expert testimony in support of his claim of self-defense. Appellant also argues that the trial court erred by denying his request that the jury be instructed on the lesser offense of manslaughter in the first degree (heat of passion). We conclude that the trial court did not abuse its discretion as to either ruling and we affirm.

Appellant and 18–year–old Sam Caffey first met on September 14, 1997, six weeks before Caffey was shot to death. Early that morning, Caffey and his stepfather, Joe Wilson, Jr., chased two men Caffey believed had attempted to break into Caffey's mother's car. Caffey had identified the two men as appellant and appellant's friend, Sam Hoffstrom. According to Hoffstrom, Caffey threatened to kill him while chasing him and according to Wilson, appellant denied attempting to break into the car but gave a false name for himself and Hoffstrom. Wilson denied that any threats were made to appellant.

Hoffstrom testified that he encountered Caffey a few days later in a store and Caffey "stared" at him, and some time after that Caffey again chased Hoffstrom and appellant. Hoffstrom also testified that appellant feared Caffey because of these encounters.

On October 27, 1997, at approximately 1 p.m., Caffey left Patrick Henry High School in Minneapolis to go home and get gym clothes for basketball tryouts later that afternoon. Caffey was waiting to return to school at the bus stop at the corner of 34th and Penn Avenue North when appellant rode by on his bike.[1] After passing Caffey and continuing down an alley north from Penn Avenue to Queen Avenue, appellant remembered Caffey from the prior incidents. Appellant told police he looked back when he neared the end of the alley and saw Caffey standing at the Penn Avenue entrance of the alley gesturing toward him in a threatening manner. An eyewitness testified that she saw Caffey motioning with his hands as if he were challenging someone to a fight.

Appellant continued riding his bike away from Caffey but when he reached the end of the alley and was out of Caffey's sight, he decided to go back. Doubling back down 35th Street, appellant set down his bike, crossed several neighborhood yards, and returned to the Penn Avenue entrance to the alley. In his statement to police, appellant admitted that on his way back to 34th Street and Penn Avenue he was thinking, "I might as well just shoot him before he shoots me." Appellant told police that he "peeked" out from behind a garage and saw Caffey standing at the bus stop down the street. Appellant began walking toward Caffey, who spotted him and made a gesture which appellant inter-

---

1. Appellant did not testify at trial but his earlier statement to police was introduced by the state as evidence at trial.

preted to mean "What's up?" As appellant continued to walk toward Caffey, appellant pulled a single-action revolver out of his coat, pointed the revolver at Caffey, then cocked and fired the weapon three times. The first bullet struck Caffey in the middle of the forehead and the other two shots missed him. Caffey died the following morning at a hospital.

In his statement to police, appellant admitted that Caffey's arms were at his side and that Caffey had not pulled a weapon at the time appellant shot him. In fact, no weapon was found on or near Caffey's body. When he fired the fatal shot, appellant was nearly half a block away from Caffey, yet he told police that he "pulled the trigger out of fear," thinking, "I'm gonna shoot him before he ends up kill[ing] me." In his statement to police, appellant said that he shot Caffey because he was afraid that someday Caffey would shoot him. After shooting Caffey, appellant fled to Hoffstrom's home where he played video games. He later described the killing to a friend as "tak[ing] care of business."

At trial, appellant sought to introduce expert testimony from a former Minneapolis police officer regarding crime statistics and criminal activity in north Minneapolis, the community where the shooting occurred. The former police officer, then an investigator for the Hennepin County Public Defender's Office, had not been involved in the public defender's investigation of this case. Appellant argued that this testimony would help the jury understand the circumstances a young person faced in the community and, thus, why Caffey's alleged threats caused appellant to fear for his life, why appellant did not report the threats to police, and why, under the circumstances, it was reasonable for appellant to kill Caffey.

The trial court sustained the prosecutor's objection to the proffered testimony but allowed appellant's expert to testify regarding matters that directly contradicted the testimony of the state's police investigators. The trial court reasoned that expert testimony regarding the circumstances a youth would have faced in north Minneapolis in October of 1997, including crime statistics, was irrelevant.

At the conclusion of the trial, the court instructed the jury on the elements of first-degree premeditated murder, second-degree intentional murder, and second-degree felony murder. The court granted appellant's request for a self-defense instruction, but denied appellant's request for a jury instruction on the lesser offense of first-degree manslaughter (heat of passion). Appellant was convicted of first-degree premeditated murder and was sentenced to life imprisonment.

### I.

The first issue is whether the trial court abused its discretion by sustaining the prosecutor's objection to the proffered testimony of appellant's expert regarding the circumstances a youth would have faced in north Minneapolis in October of 1997.

■ Minn. R. Evid. 702 controls the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

It is the trial court's responsibility to scrutinize the proffered expert testimony as it would other evidence and exclude it when the testimony is irrelevant, confusing, or otherwise not helpful. *See* Minn. R. Evid. 402, 403; *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984).

■ The admissibility of an expert's opinion testimony rests within the sound discretion of the trial court and we will not reverse unless there is clear error. *See State v. Koskela*, 536 N.W.2d 625, 629 (Minn.1995). Courts have traditional-

ly proceeded with great caution when admitting testimony of expert witnesses, especially in criminal cases, because "[a]n expert with special knowledge has the potential to influence a jury unduly." *State v. Grecinger*, 569 N.W.2d 189, 193 (Minn. 1997).

■ Appellant offered the expert testimony in support of his claim of self-defense. The elements of self-defense are "(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger." *State v. Basting*, 572 N.W.2d 281, 285–86 (Minn. 1997); *see also* Minn.Stat. § 609.06, subd. 1(3) (1998) (use of force authorized when used by a person to resist an offense against the person).

■ According to appellant, the expert testimony would have tended to prove that, because of high crime in the community, it was reasonable for a young person living in north Minneapolis to so fear for his life that he would make a preemptive strike and kill any person who caused him such fear. Appellant argues that the expert's testimony would have helped the jury understand that appellant had reasonable grounds for believing that he was in imminent danger of death or great bodily harm. We are not persuaded by appellant's arguments.

■ Appellant's proffered expert testimony would not have been helpful to the jury. Appellant offered no evidence that *he* believed crime in general was so rampant in north Minneapolis that a preemptive strike against anyone causing him fear was necessary. The absence of some evidence tying the expert's proposed testimony to the appellant takes from the jury the "responsibility for judging credibility and the facts" with respect to the determination of whether appellant's actions were reasonable. *Grecinger*, 569 N.W.2d at 193.

■ Further, the trial court did not abuse its discretion when it determined that such evidence was irrelevant, stating that it "did not believe that [appellant's proposed standard] is the standard for self-defense." The elements of self-defense are by nature very specific to the person apprehending fear and the very particular circumstances causing fear. Our case law has espoused a thoughtful analysis of the particular circumstances in which defendants have found themselves when allegedly acting in self-defense. *See, e.g., State v. Austin*, 332 N.W.2d 21, 24 (Minn.1983); *State v. Morgan*, 296 N.W.2d 397, 402–03 (Minn.1980); *State v. Graham*, 292 Minn. 308, 310–12, 195 N.W.2d 442, 444–45 (1972); *State v. Baker*, 280 Minn. 518, 521–24, 160 N.W.2d 240, 242–43 (1968); *State v. Shippey*, 10 Minn. 223 (1865). In contrast, the appellant's theory in this case is the exact opposite of our accepted doctrine of self-defense. The appellant's theory is very general, applying to a community rather than to appellant in particular, and is non-circumstantial, based on a generalized fear of crime in that community. The trial court acted well within its discretion when it excluded the expert's proffered testimony on grounds of relevancy.

Appellant also contends that the expert's proffered testimony should have been admitted because it was akin to the expert testimony commonly presented in self-defense cases involving battered woman syndrome. *See State v. Hennum*, 441 N.W.2d 793 (Minn.1989). This comparison is without merit. First, battered woman syndrome is a scientifically recognized and accepted psychological syndrome. In this case, the appellant's expert was not offering evidence of a scientifically recognized and accepted syndrome. Second, battered woman syndrome testimony applies in a very particularized set of circumstances, where there has been a history of abuse. *See Grecinger*, 569 N.W.2d at 193 (noting

foundation for battered woman syndrome testimony). In contrast, the expert testimony offered in this case was of a general phenomenon that, arguably, would apply to everyone in the community.

■ Even if the proffered testimony was helpful and scientifically valid, appellant also failed to establish at least two elements of self-defense.[2] The evidence refutes appellant's claim that he had no "reasonable possibility of retreat to avoid the danger," an essential element of self-defense. *Basting*, 572 N.W.2d at 285. Appellant admitted in his statement to police that he abandoned his successful retreat from Caffey and any imminent danger, and that he became the aggressor in the incident. Self-defense is not available to one who abandons a successful retreat and elects instead to make an aggressive choice to confront the victim. *See Austin*, 332 N.W.2d at 24. Appellant admitted to police that he rode his bike away from Caffey and that Caffey did not have a gun, much less point one at him, and further that Caffey did not pursue him once he entered the alley.

There is also no support in the evidence for a second element of self-defense, "the absence of aggression or provocation" by the appellant. *Basting*, 572 N.W.2d at 285. In fact, the evidence confirms that appellant became the aggressor in the incident. Appellant formed the intent to kill only after he had ridden away from Caffey and any potential peril. Once he decided to return to Caffey's location, appellant rode his bike down an adjacent street, crossed several yards, peered out from behind a garage, then proceeded to shoot Caffey in the forehead from half a city block away. Appellant aborted his already successful escape and made the aggressive choice to confront Caffey.

Therefore, the trial court did not err when it concluded that the proffered expert testimony in support of appellant's claim of self-defense was irrelevant.

## II.

■ The second issue is whether the trial court erred by denying appellant's request that the jury also be instructed on first-degree manslaughter (heat of passion). A defendant "may be convicted of either the crime charged or an included offense, but not both." Minn.Stat. § 609.04, subd. 1 (1998). Determining whether to submit a lesser offense to the jury lies within the sound discretion of the trial court, yet where the evidence warrants an instruction, the trial court must give it. *See Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986).

■ A trial court should submit an instruction on a lesser offense when: (1) the offense in question is an "included" offense; and (2) a rational basis exists for the jury to convict appellant of the lesser offense and acquit him of the greater crime. *See State v. Griffin*, 518 N.W.2d 1, 3 (Minn.1994) (citing *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–126 (Minn.1975)). However, "[t]he mere fact that the jury has the power to acquit irrationally in the teeth of overwhelming evidence of guilt may not be used as the reason for submitting lesser offenses." *State v. Patch*, 329 N.W.2d 833, 836 (Minn. 1983).

Manslaughter in the first degree (heat of passion) as defined in Minn.Stat. § 609.20(1) (1998) is a lesser-included offense of first-degree premeditated murder as defined in Minn.Stat. § 609.185(1) (1998). *See Bellcourt*, 390 N.W.2d at 273. Therefore, the only question presented is whether the evidence provides a rational basis for the jury to convict appellant of

**2.** The trial court agreed that the evidence did not support appellant's self-defense claim when it suggested at the close of the case that a self-defense jury instruction was not warranted. According to the trial court, the only

reason a self-defense instruction was given was because such an instruction was given at the beginning of the case and the trial court feared that not giving the instruction again in such a circumstance might be prejudicial.

manslaughter in the first degree (heat of passion) and acquit him of the greater crime of first-degree murder. Here, the evidence provided no rational basis that would have permitted the jury to convict appellant of manslaughter in the first degree (heat of passion).

For the jury to convict appellant of manslaughter in the first degree (heat of passion), the evidence would have to provide a rational basis for the jury to find: (1) that appellant killed Caffey in the heat of passion; and (2) that appellant's passion was provoked by words or acts that would provoke a person of ordinary self-control under similar circumstances. *See* Minn.Stat. § 609.20(1); *State v. Brocks,* 587 N.W.2d 37, 41 (Minn.1998) (citing *State v. Buntrock,* 560 N.W.2d 383, 386 (Minn.1997)).

To determine whether the killing was done in the heat of passion requires a subjective analysis. *See Brocks,* 587 N.W.2d at 41. We have stated, "it is the emotional status of the defendant which is of primary importance in determining whether a homicide is murder or manslaughter in the first degree." *State v. Boyce,* 284 Minn. 242, 254–55, 170 N.W.2d 104, 112 (1969).

However, to determine whether there were acts sufficient to provoke a person of ordinary self-control under like circumstances requires an objective analysis. *See Buntrock,* 560 N.W.2d at 387. The adequacy of the provocation is judged from the perspective of a person of ordinary self-control under like circumstances. *See id.* On appeal, we look to the record as a whole to make these determinations. *See Griffin,* 518 N.W.2d at 3.

While passion may be caused by fear or terror, standing alone those emotions are insufficient to mitigate murder to manslaughter. *See State v. Buchanan,* 431 N.W.2d 542, 549 (Minn.1988). There must also be evidence that the defendant's fear was caused by the victim's words or acts, and that the victim's words or acts

were "sufficient to provoke a person of ordinary self-control." *Id.* There is no such evidence in the record.

The words or acts appellant points to are simply insufficient to provoke a person of ordinary self-control. At worst, Caffey stood in the alley and challenged appellant to a fight as appellant rode away on his bike. While appellant argues that this threat was made only after Caffey had threatened to kill appellant on other occasions, the key fact in this incident is that appellant continued to ride his bike away from Caffey and any perceived threat. Only after deciding that he should kill Caffey before Caffey "one day" killed him, did appellant ride his bike down a different alley and cross several neighborhood yards to get back near the initial confrontation. Appellant then shot Caffey from half a block away.

The trial court acted well within its discretion when it refused to instruct the jury regarding the lesser offense of manslaughter in the first degree (heat of passion).

Affirmed.