STATE OF MINNESOTA

IN SUPREME COURT

A23-0271

Court of Appeals                                                    Hennesy, J.
                                      Concurring, Thissen, McKeig, Moore, III, JJ.
                                                          Took no part, Gaïtas, J.


State of Minnesota,

                    Respondent,

vs.                                                           Filed: April 16, 2025
                                                       Office of Appellate Courts
Henry Lee Brown,

                    Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Britta K. Nicholson, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

The criminal vehicular homicide statute for leaving the scene, Minnesota Statutes § 609.2112, subd. 1(a)(7) (2024), does not require the State to prove a defendant was operating a motor vehicle at the time of a collision.

Affirmed.

O P I N I O N

HENNESY, Justice.

This case presents an issue of statutory interpretation—specifically, whether the criminal vehicular homicide statute for leaving the scene, Minn. Stat. § 609.2112, subd. 1(a)(7) (2024),[1] requires the State to prove a defendant was operating a motor vehicle at the time of a fatal collision. Appellant Henry Lee Brown pled guilty to violating this statute in connection with a 2021 fatal collision. Before sentencing, Brown filed a motion to withdraw his guilty plea, which the district court denied. On appeal, Brown argued the district court abused its discretion when it denied his motion. In support of his argument, Brown asserted that Minn. Stat. § 609.2112, subd. 1(a)(7), required the State to prove both that at the time of the collision (1) he was operating the vehicle, *and* (2) his operation of the vehicle was volitional. Based on that assertion, Brown argued the factual basis for his guilty plea was inaccurate, and therefore constitutionally invalid, because he claimed he

---

[1] The Legislature amended the criminal vehicular homicide statute in 2023. The statutory language that is relevant to this case, however, has not changed. *See* Act of May 30, 2023, ch. 63, § 39.

was unconscious and incapable of volitionally operating the vehicle at the time of the collision.

The court of appeals affirmed Brown's conviction, concluding that the statute did not require the State to prove volitional operation of the vehicle at any time. We need not reach the issue on which the court of appeals based its decision, because an act of operating a motor vehicle that takes place before a collision can satisfy the requirements of Minn. Stat. § 609.2112, subd. 1(a)(7), and Brown admitted in the factual basis for his plea that he operated the vehicle volitionally before the collision. We therefore affirm the decision of the court of appeals on other grounds.

**FACTS**

On March 4, 2021, Brown was driving a motor vehicle near his home in Minneapolis. His girlfriend was in the passenger seat. When they were within blocks of Brown's home, Brown hit and killed a pedestrian. He did not stop at the scene. He drove home and did not contact the police.

The State charged Brown with two counts of criminal vehicular homicide. In Count I, the State charged Brown with criminal vehicular homicide for operating a vehicle with negligence while under the influence of alcohol under Minn. Stat. § 609.2112, subd. 1(a)(2)(i) (2024). In Count II, the State charged Brown with criminal vehicular homicide for leaving the scene after causing a collision under Minn. Stat. § 609.2112, subd. 1(a)(7). Brown initially pled not guilty to both counts, and the case proceeded to trial.

3

On June 14, 2021, after the second day of jury selection, Brown's girlfriend told the prosecution for the first time that Brown had suffered a medical incident at the time of the collision. The next day, Brown pled guilty to Count II, criminal vehicular homicide for leaving the scene after causing the collision.

In providing the factual basis for his guilty plea, Brown admitted that he was driving the motor vehicle that hit and killed the pedestrian. He further admitted that he left the scene of the collision and drove home afterwards without notifying the police. Brown said, however, that he had suffered a "medical incident" and had lost consciousness just before the collision. He acknowledged that he continued driving and regained consciousness a few blocks from the collision. He said he did not recall what happened while he was unconscious. Brown agreed that he "caused the collision" with a pedestrian.

During the plea colloquy, the district court questioned whether the plea should be a *Norgaard* plea,[2] given that Brown did not recall the collision. The parties agreed a *Norgaard* plea was unnecessary because Brown acknowledged that he had been aware of his duty to report the accident as soon as possible. The district court remarked that it was "not sure whether this is a *Norgaard* plea or not," but agreed to supplement the factual basis of Brown's plea with his girlfriend's June 14, 2021 statement to the prosecution.

---

[2]     *See State ex rel. Norgaard v. Tahash*, 110 N.W.2d 867 (Minn. 1961). For a discussion of *Norgaard* pleas, see *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994) ("A defendant may also plead guilty even though he or she claims a loss of memory, through amnesia or intoxication, regarding the circumstances of the offense. In such cases, the record must establish that the evidence against the defendant is sufficient to persuade the defendant and his or her counsel that the defendant is guilty or likely to be convicted of the crime charged.").

In her statement, Brown's girlfriend reported the following: She had noticed the motor vehicle accelerating as they approached a stop sign. She looked over and saw Brown "convulsing" with "his head nodded down." She called his name "to wake him up." She saw a pedestrian and tried to "honk . . . the horn to warn him," but the vehicle collided with the pedestrian. Brown's foot remained on the gas pedal, and the vehicle remained in motion. Brown regained consciousness "two short side blocks" from the scene of the collision. When Brown regained consciousness, Brown's girlfriend was screaming, "I think we hit somebody." Brown drove home and parked the car. Brown's girlfriend showed Brown that the car's windshield was cracked from the collision. She returned to the scene of the collision, which was only four houses away, but did not contact the police. Brown did not return to the scene or contact the police. Brown's girlfriend returned home and told Brown that the pedestrian was dead. Even after learning the pedestrian had died, Brown did not return to the scene or contact the police.

On November 15, 2022, Brown filed a motion to withdraw his guilty plea. The district court denied Brown's motion and sentenced him to 58 months in prison.

Brown appealed, arguing that the district court abused its discretion when it denied his motion to withdraw his guilty plea. In support of his argument, Brown asserted that Minn. Stat. § 609.2112, subd. 1(a)(7), required the State to prove both that (1) he was operating the vehicle at the time of the collision, and (2) his operation was volitional at the time of the collision. Based on that assertion, Brown argued the factual basis for his guilty plea was inaccurate, and therefore constitutionally invalid, because he claimed he was unconscious at the time of the collision. The court of appeals affirmed the district court,

5

holding that "[t]he statute does not require that Brown's operation of the vehicle include a volitional act," reasoning that "the act constituting the crime is leaving the scene of the collision and failing to notify law enforcement to enable law enforcement to investigate what occurred." *State v. Brown*, No. A23-0271, 2024 WL 1251644 *5 (Minn. App. Mar. 25, 2024). The court of appeals concluded that "Brown's guilty plea was accurate and therefore valid." *Id.*

Brown filed a petition for review that raised several issues, but we granted review of only one—whether Minn. Stat. § 609.2112, subd. 1(a)(7), requires that a person act volitionally in operating a motor vehicle at the time of a collision.

## ANALYSIS

To be constitutionally valid, a guilty plea must be accurate. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "Accuracy requires that the plea be supported by a proper factual basis . . . ." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003). The record must contain sufficient facts to support a conclusion that the defendant's conduct falls within the charge. *Id.* "A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94. The question of whether a defendant's guilty plea is valid presents a question of law that we review de novo. *Dikken v. State*, 896 N.W.2d 873, 876 (Minn. 2017).

Brown argues that the criminal vehicular homicide statute—including the offense of leaving the scene—requires that the State prove a person was volitionally operating a motor vehicle at the time of the collision. Because he claims he was unconscious at the

6

time of the collision, Brown argues that his factual basis does not contain sufficient facts to satisfy the elements of the charged offense.

This case presents two questions about the interpretation of Minn. Stat. § 609.2112, subd. 1(a) (2022). First, does that statute require an act of operation at the time of a collision? And, if so, must that act be volitional? Because we conclude that the statute does not require any act of operation at the time of a collision, we do not reach the second question.

Our analysis begins with the text of the statute. Minnesota Statutes § 609.2112, subd. 1(a), states:

> [A] person is guilty of criminal vehicular homicide . . . if the person *causes the death of a human being* not constituting murder or manslaughter *as a result of operating a motor vehicle*:
>
> (1) in a grossly negligent manner;
> (2) in a negligent manner while under the influence of [listed substances];
> (3) while having an alcohol concentration of 0.08 or more;
> (4) while having an alcohol concentration of 0.08 or more, as measured within two hours of the time of driving;
> (5) in a negligent manner while under the influence of an intoxicating substance and the person knows or has reason to know that the substance has the capacity to cause impairment;
> (6) in a negligent manner while any amount of a [listed] controlled substance . . . is present in the person's body;
> (7) *where the driver who causes the collision leaves the scene of the collision* in violation of section 169.09, subdivision 1 or 6; or
> (8) where the driver had actual knowledge that a peace officer had previously issued a citation or warning that the motor vehicle was defectively maintained, the driver had actual knowledge that remedial action was not taken, the driver had reason to know that the defect created a present danger to others, and the death was caused by the defective maintenance.

(Emphasis added.)[3]  Brown's plea was under subdivision 7 of this statute, which criminalizes leaving the scene of a collision "in violation of section 169.09, subdivision 1 or 6." *Id.*  Minnesota Statutes § 169.09, subd. 1, states that:

> The driver of any motor vehicle involved in a collision shall immediately stop the vehicle at the scene of the collision, or as close to the scene as possible, and reasonably investigate what was struck.  If the driver knows or has reason to know the collision resulted in injury to or death of another, the driver in every event shall remain at the scene of the collision until the driver has fulfilled the requirements of this section as to the giving of information.  The stop must be made without unnecessarily obstructing traffic.

Minn. Stat. § 169.09, subd. 1 (2024).  Minnesota Statutes § 169.09, subd. 6, requires that, if the collision results in bodily injury or death to another,

> [t]he driver shall, after compliance with this section and by the quickest means of communication, give notice of the collision to the local police department if the collision occurs within a municipality, to a State Patrol officer if the collision occurs on a trunk highway, or to the office of the sheriff of the county.

Minn. Stat. § 169.09, subd. 6 (2024).

Brown argues that our interpretation of the phrase "operating a motor vehicle," adopted in *State v. Henderson*, 907 N.W.2d 623 (Minn. 2018), is determinative here.  We disagree.

In *Henderson*, we considered whether a passenger who deliberately grabbed the steering wheel of a moving car, causing a collision, was "operating" a motor vehicle under

---

[3]    The relevant quoted language here is identical both under the current version of the law and the version of the law applicable to Brown.

8

the criminal vehicular operation statute.[4]  *Id.* at 624.  We concluded that they were, interpreting "operating" to mean "any act that causes a motor vehicle to function or controls the functioning of the motor vehicle, which includes manipulation of the steering wheel of a moving vehicle by a passenger."  *Id.* at 628.  But while we defined "operating" in *Henderson*, we did not decide *when* the act of operating must occur.  Consequently, our analysis in *Henderson* does not answer the determinative threshold question in this case as to whether the statute requires an act of operation at the time of a collision.

To answer that question, we must consider the context in which the word "operating" appears.  Minnesota Statutes § 609.2112, subd. 1(a), makes it a crime to "cause[] the death of a human being . . . *as a result of operating a motor vehicle*" under certain conditions.  Here, for purposes of subdivision 1(a)(7), the relevant condition is that the driver who "causes the collision" subsequently leaves the scene.  But the word "collision" does not appear in the first paragraph of subdivision 1(a) that is broadly applicable to all subparts.[5]  Instead, as a general matter, the event that must be caused "as

---

[4]     In *Henderson*, the defendant was charged under a previous version of the criminal vehicular operation statute.  907 N.W.2d at 625 n.1 (explaining that the statute was renumbered after Henderson's offense but was not substantively changed).  At that point, the statute read "[a] person is guilty of criminal vehicular homicide or operation and may be sentenced as provided in subdivision 1a, if the person causes injury to or the death of another as a result of operating a motor vehicle."  Minn. Stat. § 609.21 (2012).  In 2014, criminal vehicular homicide and operation were reorganized into separate sections.  Act of Apr. 30, 2014, ch. 180, §§ 4–5, 2014 Minn. Laws 281, 283–87.  The relevant language of each statute has not changed since the language we interpreted in *Henderson*.  Therefore, our interpretation of the word "operating" in *Henderson* applies to criminal vehicular homicide as well as criminal vehicular operation.

[5]     The only place the word "collision" appears in Minn. Stat § 609.2112 is in subdivision 1(a)(7), which pertains to criminal vehicular homicide "where the driver who

9

a result of operating a motor vehicle" for criminal vehicular homicide is a death of a human being—not a collision.

The statute does not define the phrase "as a result of," so it is appropriate to consider dictionary definitions to determine its common approved usage. According to the *American Heritage Dictionary* 1054 (2nd College ed. 1982), when used as a noun, "result" means "[t]he consequence of a particular action, operation, or course." Using this definition, the death of a human being that happened *after* a person began operating a motor vehicle would be "as a result" of their operation of a motor vehicle, as long as the death was a consequence of their operation of the motor vehicle. The phrase "as a result" does not connote that the cause and result must happen simultaneously. Instead, the phrase "as a result of operating a motor vehicle" modifies the phrase "causes the death of a human being," and clarifies that a person only commits a crime if the death is caused by operation of a motor vehicle as opposed to other possible causes. It describes the *way* that a person must cause the death of a human being, but it does not communicate anything about *when* the causal action must take place. If the Legislature had intended to require the State to prove that a driver was operating a motor vehicle at the time of a fatal collision, it could have prohibited a driver from leaving the scene of a collision when "the person causes the death of a human being *while* operating a motor vehicle." The word "while" is commonly understood to mean "during the time that." *The American Heritage Dictionary* 1376 (2nd

---

causes the collision leaves the scene of the collision in violation of section 169.09, subdivision 1 or 6." The focus of this paragraph is not on the fatal operation of a motor vehicle, but rather the driver's failure to remain at the scene.

College ed. 1982). Instead of using "while," the Legislature used the phrase "as a result of." We therefore conclude that under the plain and unambiguous language of the statute, an act of operation that takes place prior to a collision can satisfy the requirements of Minn. Stat. § 609.2112, subd. 1(a), including the prohibition on leaving the scene in subdivision 1(a)(7).

Our analysis in this case is consistent with our holding in *State v. Al-Naseer*, in which a driver who fell asleep at the wheel was charged with criminal vehicular homicide—gross negligence. 690 N.W.2d 744, 752 (Minn. 2005). In that case, we held that to "determine whether a defendant engaged in gross negligence or ordinary negligence, the defendant's conduct must be examined. Specifically, it is the conduct that led to the defendant's falling asleep at the wheel, not the conduct that takes place while the defendant is asleep." *Id.* Put differently, negligent operation of a motor vehicle can take place *before* a fatal collision. As Professor LaFave has commented, "one may be guilty of criminal homicide (or battery) even though he is unconscious or asleep at the time of the fatal (or injurious) impact."[6] 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.1(c) at 579 (3d ed.

---

[6] Our holding that the operation of a motor vehicle can take place *before* a fatal collision, however, is distinct from the question of whether the vehicle's operation was volitional and goes beyond the circumstance of a driver who is unconscious or asleep at the time of the collision. The facts of *Henderson* suggest an example. In that case, we held that a passenger who grabbed the steering wheel of a moving vehicle was "operating" the motor vehicle within the meaning of the criminal vehicular operation statute. 907 N.W.2d at 624. As a result of the passenger's operation, "the vehicle swerved off the road, traveled part way up a support cable attached to a utility pole, [] flipped upside down," and other people in the car suffered great bodily harm. *Id.* at 625. While *Henderson* does not discuss the precise timing of these events, the fact that the passenger may have released the steering wheel before the vehicle left the road would not necessarily protect them from liability. Under our holding in this case, the State did not need to prove that the passenger was still

11

2018) (citing cases from other jurisdictions where defendants caused harm but lost consciousness before the harm was realized).

Brown argues that this conclusion would expose drivers who suffer medical emergencies to criminal liability for any deaths that result from operating motor vehicles, no matter how remote that operation is from the deaths. That is not the case. As we explained in *State v. Smith*, the causation language in this statute protects operators from criminal liability for remote consequences. In *Smith*, we held that "the defendant's operation of a motor vehicle must be the 'proximate cause' of the victim's death 'without the intervention of an efficient independent force in which [the] defendant did not participate or which he could not reasonably have foreseen.' " 835 N.W.2d 1, 4 (Minn. 2013) (quoting *State v. Schaub*, 44 N.W.2d 61, 64 (Minn. 1950)). The proximate-cause requirement, however, does not protect Brown from liability, because it is uncontested that his operation of the motor vehicle was the proximate cause of the pedestrian's death.[7]

Minnesota Statutes section 609.2112, subdivision 1(a), also protects people who suffer medical emergencies in other ways. To be convicted under the leaving-the-scene provision at issue here, a defendant must leave the scene of a collision in violation of Minn.

---

operating the motor vehicle when the harmful result occurred. The State only needed to prove that the passenger's act of operation was a proximate cause of the harm.

[7] We do not hold that a medical emergency can never constitute a sufficient independent force which would cut off a defendant's liability for criminal vehicular homicide. Instead, we simply hold that because it is uncontested that Brown's operation of the motor vehicle was the proximate cause of the pedestrian's death, the proximate-cause requirement discussed in *Smith*, 835 N.W.2d at 4, does not protect Brown from liability here.

12

Stat. § 169.09, subds. 1 or 6. Section 169.09, in turn, only applies when a driver "knows or has reason to know the collision resulted in injury to or death of another." Minn. Stat. § 169.09, subd. 1. If a person having a medical emergency lacked this knowledge, they could not be convicted under this statute. Further, Minn. Stat. § 169.09, subd. 1 requires drivers to stop "as close to the scene as possible." A driver's ongoing medical issue would be relevant to determining whether they stopped as close to the scene as possible. Section 169.09 also makes an exception when a driver is responding to a medical emergency:

> It is an affirmative defense to prosecution under subdivisions 1, 2, and 6 that the driver left the scene of the collision to take any individual suffering immediately demonstrable bodily injury in the collision to receive emergency medical care if the driver of the involved vehicle gives notice to a law enforcement agency as required by subdivision 6 as soon as reasonably feasible after the emergency medical care has been undertaken.

Minn. Stat. § 169.09, subd. 15 (2024). Considered as a whole, Minn. Stat. § 169.09—a violation of which is required under the leaving-the-scene provision of the criminal vehicular homicide statute—operates to minimize any risk of unjustly convicting people who suffer medical emergencies for leaving the scene under Minn. Stat. § 609.2112, subd. 1(a)(7). The risk of unjustly convicting people who suffer medical emergencies is likewise minimized as to the other forms of criminal vehicular homicide, which require the mens rea elements of either *gross* negligence, Minn. Stat. § 609.2112, subd. 1(a)(1); negligence *while under the influence* of a controlled substance, *id.*, subd. 1(a)(2)–(6); or *actual knowledge* that a vehicle was defectively maintained, not fixed, and that the defect was dangerous, *id.*, subd. 1(a)(8).

13

Having concluded that an act of operation that takes place prior to a collision can satisfy Minn. Stat. § 609.2112, subd. 1(a)(7), we do not reach the question of whether operation must be volitional, because Brown conceded that he was volitionally operating the motor vehicle until he lost consciousness.

In sum, an act of motor vehicle operation that takes place prior to a collision can satisfy the requirements of Minn. Stat. § 609.2112, subd. 1(a)(7), the statute under which Brown was convicted. Consequently, the factual basis for Brown's conviction was adequate because he admitted that he volitionally operated the motor vehicle until he lost consciousness, that his operation was the proximate cause of the pedestrian's death, and that he left the scene and failed to return after he was informed the pedestrian had died. Based on this analysis, we need not reach the issue on which the court of appeals based its decision: whether the criminal vehicular homicide statute required the State to prove that Brown's operation of the motor vehicle included a volitional act. Consequently, we affirm the decision of the court of appeals on other grounds.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals on other grounds.

Affirmed.

14

CONCURRENCE

THISSEN, Justice (concurring).

I concur in the court's decision. I would affirm the decision of the court of appeals. But I would decide the case on a ground the court does not reach.

Henry Lee Brown was charged with "caus[ing] the death of a human being . . . as a result of operating a motor vehicle . . . where the driver who causes the collision leaves the scene of the collision . . . ." Minn. Stat. § 609.2112, subd. 1(a)(7) (2024). He is guilty of that crime because the victim died as the result of a collision between the victim and the motor vehicle Brown was operating, Brown knowingly left the scene of the collision and Brown knew that the collision resulted in injury to or death of the victim. The necessary volitional criminal act was leaving the scene of the collision under those circumstances; something about which there is no dispute on appeal. There is no need at all to inquire about whether the operation of the vehicle was volitional or get into questions of the timing of the volitional operation.

I conclude that the phrase "as a result of operating a motor vehicle" as used in Minnesota Statutes section 609.2112, subdivision 1(a) (2022), does not require proof that the operation of a motor vehicle—as a stand-alone concept—must be volitional at any point in time. I do so in part because the word "operating" as used in the phrase "as a result of operating a motor vehicle" is a gerund noun—a verb that functions as a noun. It is a short way of saying "as a result of *the operation of* a motor vehicle." The prefatory language of subdivision 1(a) already has a causation requirement ("causes the death of a human being"). *Id.* The phrase "as a result of operating a motor vehicle" serves a different

C-1

purpose. It is descriptive. It limits the several distinct crimes identified in this amalgam statute to circumstances arising from the defendant's operation of a vehicle.

For some of the crimes set forth in section 609.2112, the volitional criminal act is operating the vehicle in a certain manner—in a grossly negligent manner or in a negligent manner under the influence of certain intoxicating substances. *See* Minn. Stat. § 609.2112, subd. 1(a)(1), (4), (8) (2024); Minn. Stat. § 609.2112, subd. 1(a)(2) (2022). *State v. Al-Naseer*, 690 N.W.2d 744 (Minn. 2005), is such a case. In *Al-Naseer*, we explained that the volitional criminal act under section 609.2112, subd. 1(a), "is the conduct that led to the defendant's falling asleep at the wheel [things like driving while lacking sleep, spending an excessive length of time at the wheel, ignoring sure warning signs of fatigue, or driving under the influence of drugs or alcohol that may result in falling asleep] not the conduct that takes place while the defendant is asleep." *Id.* at 752, 753. *See also* 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.1(c) at 579 (3d ed. 2018) (collecting similar cases).

For other crimes set forth in section 609.2112, the volitional act is the decision to operate the vehicle in an intoxicated condition—a strict liability offense. *See* Minn. Stat. § 609.2112, subd. 1(a)(3)–(4) (2024); *see generally State v. Schwartz*, 957 N.W.2d 414 (Minn. 2021). It is not the mere operation of the vehicle.

In neither of these sets of circumstances is there a need to separately prove, in addition to the specific volitional act that makes each distinct subpart of section 609.2112

a crime, that the *operation* of the vehicle at the time the death was caused was also volitional.[1]

So too for the crime defined in section 609.2112, subdivision 1(a)(7). Under this provision, the volitional criminal act is knowingly leaving the scene where the defendant was operating the motor vehicle that caused the fatal collision. The criminal harm is leaving the scene of the collision when a driver knows or should know that he was involved in a collision that resulted in injury or death of another. *See* Minn. Stat. § 169.09, subd. 1 (2024).[2] There is no requirement for the State to separately prove that Brown's operation of the vehicle was volitional at the time of the collision. For this reason, I concur with the court's decision to affirm the court of appeals, which properly affirmed Brown's conviction.

---

[1]    Similarly, under section 609.2112, subd. 1(a)(8), the specific volitional act is operating a motor vehicle with "actual knowledge that a peace officer had previously issued a citation or warning that the motor vehicle was defectively maintained, [where] the driver had actual knowledge that remedial action was not taken, [and where] the driver had reason to know that the defect created a present danger to others . . . ." In addition, for this specific crime, there is a narrower causation requirement: the defective maintenance (as opposed to some other aspect of operating the vehicle) was the reason for the victim's death.

[2]    Minnesota Statutes section 169.09, subdivision 1, which is referenced in subdivision 609.2112, subdivision 1(a)(7), provides:

> The driver of any motor vehicle involved in a collision shall immediately stop the vehicle at the scene of the collision, or as close to the scene as possible, and reasonably investigate what was struck. If the driver knows or has reason to know the collision resulted in injury to or death of another, the driver in every event shall remain at the scene of the collision until the driver has fulfilled the requirements of this section as to the giving of information. The stop must be made without unnecessarily obstructing traffic.

Minn. Stat. § 169.09, subd. 1.

McKEIG, Justice (concurring).

I join in the concurrence of Justice Thissen.


MOORE, III, Justice (concurring).

I join the majority opinion and join in the concurrence of Justice Thissen.